RENDELL, Circuit Judge, dissenting:
*317 While I am reluctant to dissent because I have no doubt that the Bankruptcy Court carefully considered its decision to reverse course and disallow the previously approved Termination Fee, two significant aspects of this case concern me: first, the grant of a delayed reconsideration motion when there had been no clear error of fact or law, and, second, the flawed analysis of the benefit to the estates as though there had been no pre-approval of the Fee as part of the Merger Agreement. I conclude that the Bankruptcy Court abused its discretion in granting reconsideration, and, therefore, I disagree with the Majority's affirmance of the Bankruptcy Court's order.
Admittedly, the facts of the case presented a difficult situation for the Bankruptcy Court. The Next Era deal would have brought $9.5 billion to the estates. When that deal failed to obtain regulatory approval, the Debtors were forced to terminate and seek a new deal, which would bring "materially less" to the estates.[1] The Bankruptcy Court was thus faced with the prospect of further depleting the estates by payment of the $275 million Termination Fee.[2]
Nonetheless, the reconsideration of the previously approved Fee was uncalled for. The Bankruptcy Court may have "misapprehended" that the Fee would be payable in the situation that developed, but this was no legal or factual error. It was simply a failure to appreciate a particular set of potential consequences which became apparent in the light of day. But hindsight cannot justify nullifying a material term of the deal that was struck with all of the facts on the table. Here, the parties fully appreciated the potential scenarios at the time the Fee was initially approved. Indeed, when Elliott filed the reconsideration motion, the Debtors-who had every incentive to cry foul as to the initial deal and avoid paying the Fee-opposed Elliott's motion, calling the motion "Machiavellian."[3]
The Bankruptcy Court seems to say that had it appreciated this eventuality, it would not have approved the Fee, but this defies logic and common sense. The Court had considered the Fee and its importance to the deal extensively in its initial approval of it as part of the Merger Agreement. The many benefits to the estates were apparent to the Bankruptcy Court. In particular, the Court stated, "I think the evidence overwhelmingly indicates that a breakup fee was necessary to induce NextEra to make a bid, and to move forward with a merger agreement,"[4] and "[i]t's clear that the termination fee went up at the end of the process but it went up primarily, I believe, because they walked away from the match right, and the combination of match right, lower breakup fee was replaced with no match right and a higher breakup fee."[5] With regard to the size of the Fee, the Court concluded, "[1.47%] is an appropriate number for a case of this size"-that is, $18.7 billion-and "[t]he evidence is clear that this is on *318 the low end of utility-type transactions [and] on the low end of this Court's experience with regard to breakup fees that I have approved numerous times."[6] Clearly, the Fee was a necessary and integral aspect of the deal. Indeed, NextEra would have "walked" without it.[7] The Debtors urged the Court to approve the Fee as part of the deal, lest they have to go "back to the drawing board."[8] The Bankruptcy Court engaged in a thoughtful assessment of the Fee's value to the deal.[9] Thus, there was no legal flaw in the original approval, let alone a clear error. Therefore, reconsideration was unwarranted.
But the Bankruptcy Court's reasoning suffers from another infirmity. It engaged in an after-the-fact assessment of benefit to the estates as if no initial approval had been granted, citing to O'Brien and Reliant . The Court reasoned that the Fee was not an allowable administrative expense under 11 U.S.C. § 503(b)(1)(A) because "[p]ayment of a termination or break-up fee when a court (or regulatory body) declines to approve the related transaction cannot provide an actual benefit to a debtor's estate sufficient to satisfy the O'Brien standard."[10] The Court considered what did happen and conducted an O'Brien analysis anew. But this after-the-fact assessment of benefit was improper because the Fee had initially been approved as part of the Merger Agreement.
O'Brien and Reliant are distinguishable because, in those cases, the court had specifically denied breakup fees as part of the sale process. The issue before us involved the denial of the later, post-sale requests for the fee by the unsuccessful bidders as an administrative expense under § 503.[11] As the Majority notes here, in the Approval Order the Bankruptcy Court had already authorized the Debtors to pay the Fee as an allowable administrative expense that preserved value for the estates to the extent it became due and payable under the Merger Agreement.[12]
The United States Court of Appeals for the Fifth Circuit has noted this tension in In re ASARCO, L.L.C. , 650 F.3d 593 (5th Cir. 2011). There, the Court observed that "[t]he unsuccessful bidders in O'Brien and Reliant Energy sought payment for expenses incurred without the court's pre-approval for reimbursement, and thus section 503 was the proper channel for requesting payment." Id. at 602. Here, due to the previous approval, the Bankruptcy Court's analysis of the after-the-fact benefit to the estates-or lack thereof-was *319 misplaced. The Fee had been properly approved as part of the Merger Agreement, and there was no issue of allowance after the fact of an administrative expense. All that remained was to allocate and pay the previously approved Fee. There is no place in our precedent for a "double" § 503 analysis, where a party could seek approval of a fee as a term of a deal and then get another bite at the O'Brien apple, urging there was no value, if the deal sours. And yet that is what the Bankruptcy Court did here.
The reconsideration of a previously approved term of a deal, based on a bankruptcy court's failure to appreciate all of the potential ramifications of the term, sets a troubling-if not dangerous-precedent. Parties to commercial transactions present the terms of the deal to the court for approval and, once approved, are entitled to rely on the court's order, which is based on a thoughtful, well-reasoned analysis. Here, that should have been the guiding principle, and the grant of reconsideration so as to nullify the previously approved Fee when there was no clear error of fact or law was an abuse of discretion.

Elliott Br. at 19.

I submit that the fact that the Debtors were left to accept a less favorable deal is the real culprit. Had the Debtors terminated to pursue a higher and better offer after regulatory approval of the Next Era deal was denied, there would have been no reconsideration of the initial approval of the fee. Indeed, that would have been a common scenario that the Fee guarded against. Thus, the issue of the denial of regulatory approval or an end date for approval is a red herring.

A. 1206.

A. 578.

A. 579.

A. 578.

A. 483-85.

A. 549.

Although, as explained below, the controlling precedent, O'Brien and Reliant , involved consideration of the fee when presented later as a cost of administration, rather than when pre-approved as part of a sale agreement, the "benefit" or "value" of the fee is the standard for both. See, e.g. , In re Philadelphia Newspapers, LLC , No. 09-11204, 2009 WL 3242292 (Bankr. E.D. Pa. Oct. 8, 2009), rev'd in part on other grounds , 418 B.R. 548 (E.D. Pa. 2009) (using O'Brien to analyze whether to authorize a breakup fee pre-auction).

A. 43.

It is interesting to note that in both O'Brien and Reliant , the bankruptcy courts did not dismiss the unsuccessful bidders' later requests out-of-hand but seriously considered the role their bids had played in moving the sale process forward when assessing the value to the estates. The Bankruptcy Court's reasoning here, however, focused on later events, namely the denial of regulatory approval, as depriving the bid of value. I suggest this was off target, even if it had not been an abuse of discretion to entertain a motion for reconsideration.

Majority Op. at 303-04.